**JOSEPH W. WATKINS, P.C.**
Joseph W. Watkins **(SBN# 012403)**
1661 N. Swan, Suite 138
Tucson, Arizona 85712
Ph: (520) 882-9115
Joewlaw2@gmail.com
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Michael and Candie Gill, husband and wife<br><br>Plaintiffs,<br><br>v.<br><br>Aramark Sports and Entertainment Services, LLC. ("Aramark") a Delaware Limited Liability Company,  and The United States of America, a governmental entity,<br><br>Defendants, | Case No.<br><br>**COMPLAINT**<br>**(In Admiralty)** |

For their Complaint, Michael and Candie Gill, husband and wife (the "Gills"), allege as follows:

## **JURISDICTION**

1. The Gills are husband and wife, reside in Utah and are citizens of the United States of America.

2. This is a personal injury and property damage claim brought on behalf of the Gills which occurred upon the navigable waters of the United States of America, on Lake Powell, within the territory of the State of Arizona.

3. Aramark Sports and Entertainment Services, LLC ("Aramark"), is a Delaware Limited Liability Company which, as part of its business, operates tour vessels and marina services on Lake Powell and is the exclusive concessionaire for the National Park Service on Lake Powell with its fleet's home port in Page, Arizona.

4. Defendant, United States of America, has waived sovereign immunity by virtue of the Suits in Admiralty Act, 46 U.S.C. § 30901, et seq. Defendant, United States of America, is hereinafter referred to as ("USA").

5. The USA, by and through the National Park Service, ("NPS") and the United States Coast Guard ("USCG") maintain, control and oversees law enforcement issues on Lake Powell.

6. The incident, property damage and personal injuries described below had the potential to disrupt maritime commerce.

7. Based upon the foregoing, this Court has Admiralty subject matter jurisdiction over this Claim pursuant to 46 U.S.C. § 30901 and 28 U.S.C. §1333 and Article III, Section 2 of the United States Constitution.

8. Venue is proper in this Court.

## GENERAL ALLEGATIONS

9. On or about July 11, 2019, the Gills were boating on Lake Powell.

10. A tour boat, operated by Aramark was traveling in the direction of the Gill's boat.

11. The Aramark boat approached the Gill's boat traveling at a high and unsafe speed resulting in a large wake in the channel area. The Aramark boat passed the Gill's boat at a very close distance, swamping the Gill's boat, causing soft tissue injuries and emotional trauma to the Gills and their children and damage to their boat. Other boaters circled the Gill's capsized boat and rescued the family as shown below.



12. Photographs of Aramark's tour boats operating at high speeds are shown below.



13. Due to the high speed and close proximity of the Aramark boat, the Gills had no opportunity to avoid the wake.

14. Aramark tour vessels have violated the laws on Lake Powell with impunity for years due to an almost complete absence of law enforcement activity on the Lake with respect to Aramark's tour boat operations as evidenced by over two dozen incidents since 2006. Retired USCG Officers Joe Derie and Timothy Sullivan, experienced and photographed a similar, illegal, high speed pass in September 2019 as shown below.

 

15. The Gills and their children were emotionally traumatized and Ms. Gill suffered soft tissue injuries as a result of the violent wake action which capsized their boat.

16. Aramark has a long history of causing maritime casualties on Lake Powell similar to the incident alleged herein due to the negligent operation of its tour vessels including multiple, severe accidents from at least 2006 throughout the summer of 2019 predating the Gill incident.

17. A fatal accident occurred on Lake Powell in September 2006 caused, in part, by the "careless operation" of an Aramark tour vessel while navigating the waters near the area where the subject incident occurred.

18. In a 2006 report drafted by Marine Consultant Augusto Villalon for the U.S. Coast Guard, it was determined that the fatal incident occurred in part because of "A carless operation of a heavy tour vessel which creates a large wake in a narrow area of the channel" by Aramark. This report has been disclosed to Aramark and its management on multiple occasions beginning in 2016 in a separate wake-related litigation before this court.

19. Recommendations made by the investigator for the Coast Guard specifically included replacing Aramark's current fleet of tour vessels with catamaran

technology that operate with "virtually no wake. USCG, "Tiger Team Report", December 3, 2006.

20. In 2009, a report was prepared on behalf of the National Park Service titled *Wake Injuries in Glen Canyon National Recreation Area: A More Extensive Evaluation and Detailed Potential Interventions to Manage Risk of Future Injuries* (hereinafter, "NPS Report").

21. The NPS Report evaluated information from July 2008 through July 2009. The report noted that, during the sample period, there were 18 wake related injuries on lower Lake Powell, 50% of which were attributed to tour vessel wakes. *Aramark is the exclusive tour vessel concessionaire on Lake Powell.*

22. Aramark was not only aware of the NPS Report, it actively refused to participate in the report process, restricting all interaction of Aramark employees from the NPS investigator. This report has been disclosed to Aramark and its management on multiple occasions prior to July 11, 2019.

23. Like the previous Coast Guard Report, the NPS Report specifically recommended that ARAMARK "***invest in newer vessels with alternative hull designs. Different hull styles such as catamarans, hydrofoils and small-water plane-area twin-hull (SWATH) boasts have much less resistance in the water and therefore create less wake.***" NPS Report, dated September 21, 2009.

24. Aramark has consistently failed to file mandatory accident reports with the United States Coast Guard with respect to accidents involving its fleet including The M/V Desert Shadow operating on Lake Powell.

25. Aramark has consistently failed to provide adequate training regarding wake safety to its crews and with respect to the USCG Inland Marine Navigational Rules.

26. Aramark's management is well aware of, and has consented to, the on-going, negligent and dangerous operation of its tour vessels by Aramark employees, resulting in large and dangerous wakes over a period of nearly four decades which have caused numerous physical injuries and property damage. This behavior has been the subject of prior Federal Court litigation and has been addressed in multiple depositions of Aramark employees all of which pre-date the events alleged herein.

27. The USA, through the NPS and USCG is charged with both law enforcement on Lake Powell and with managing and renewing the Aramark tour boat concessions on Lake Powell.

28. The USA and its employees have known of Aramark's grossly negligent operation of its tour boat operations for years, yet still renew Aramark's operating and license privileges on Lake Powell without any legitimate oversite.

**COUNT I**
NEGLIGENCE
(All Defendants)

29. The Gills re-allege and incorporate paragraphs 1- 28 herein.

30. Aramark owed the Gills the duty to exercise reasonable care under the circumstances.

31. Aramark breached its duty by:

a. Selecting tour vessels designed in such a way as to produce a significant wake when traversing Lake Powell;

b. Continuing to use tour vessels on Lake Powell designed in such a way as to produce a significant wake after two separate reports had been issued recommending the use of alternative designs that produce lesser wakes; and after the same, exact issue has been litigated in 4 separate lawsuits since 2015. Two other lawsuits are currently pending before this Court;

   c. Operating the tour vessels at a rate of speed greater than what is reasonable and prudent under the conditions and/or with disregard to the actual and potential hazards, including the tour vessels' wakes;

   d. Failing to observe vessel traffic in the channel, failure to use a warning horn as mandated by law and failing to operate the tour vessels in such a manner as to not produce significant wakes as to cause property damage and injury to people aboard nearby vessels; and,

   e. Failing to maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation in order to avoid the risk of collision including the any risk of injury from the wake produced by the tour vessels;

   f. Failing to take any steps to disseminate accident information involving wake-related incidents to its crews and by failing to implement any risk management protocol to address the numerous, repetitive accidents caused by its crews' failure to adhere to federal, state and local laws.

32. The above alleged negligence caused the Gills to suffer the injuries and damages alleged herein.

33. The USA owes a duty to Lake Powell users such as the Gills to enforce the existing laws pertaining to boat operations on Lake Powell.

34. Despite notice of on-going violations by Aramark in its tour operations on Lake Powell, the USA through the NPS and USCG have consistently "looked the other way" and either failed or refused to cite Aramark and its crews with respect to Aramark's repeated violations breaching its obligations to Lake Powell visitors like the Gills and making the Lake a far more dangerous place, contributing to accident causation with respect to members of the public, in this case, the Gill family.

**COUNT II**
(NEGLIGENCE PER SE, STATE LAW-Aramark)

35. The Gills re-allege and incorporate paragraphs 1–31 by reference herein.

36. Arizona Statutes, Title 5, Chapter 3, Boating and Water Sports, Article 5, "Operation of Watercraft," § 5-343, Speed restrictions; excessive wake," provides that:

> No person shall operate a watercraft in excess of the posted limit or at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event, speed shall be so controlled as may be necessary to avoid colliding with any person or other watercraft, swamping other watercraft or otherwise endangering the lives or property of other persons.

37. This safety statute was enacted for the explicit purpose of establishing the duty of a vessel operator to avoid the risk of harm from the creation of a wake by vessels.

38. This statute applies to the operation of any vessel on Lake Powell and Aramark's own internal operating guidelines mandate crew compliance with all state and federal laws.

39. The Gills are members of the class for which this statute was enacted to protect.

40. Aramark violated this statute as it operated the tour vessel at a speed greater than is reasonable and prudent under the conditions with disregard for the actual and potential hazards pa the Lake. Furthermore, Aramark failed to control the speed of the tour vessel as may be necessary to avoid endangering the lives of other persons aboard nearby vessels operating in the Lake.

41. Aramark's violation of the safety statutes establishes the presumption under the Pennsylvania Rule that Aramark causing the Gills to sustain the property damage and injuries alleged herein.

8

**COUNT III**
NEGLIGENCE PER SE
(Violation of Inland Navigation Rules-Aramark)

42. The Gills re-allege and incorporate all prior allegations:

43. The Inland Rules of Navigation apply to the operation of all commercial vessels on Lake Powell.

44. USCG Inland Navigation Rule 5, titled, "Lookout" provides:

> Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision.

45. Aramark failed to maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions.

46. USCG Inland Navigation Rule 6, titled "Safe Speed" provides

> Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions. In determining a safe speed the following factors shall be among those taken into account:
>
> (a) By all vessels:
>
> (i) The state of visibility;
> (ii) The traffic density including concentrations of fishing vessels or any other vessels;
> (iii) The manageability of the vessel with special reference to stopping distance and turning ability in the prevailing conditions;
> (iv) At night, the presence of background light such as from shore lights or from back scatter from her own lights;
> (v) The state of wind, sea and current, and the proximity of navigational hazards;
> (vi) The draft in relation to the available depth of water.

       (b) Additionally, by vessels with operational radar:

        (i) The characteristics, efficiency and limitations of the radar equipment;
        (ii) Any constraints imposed by the radar range scale in use;
        (iii) The effect on radar detection of the sea state, weather and other sources of interference;
        (iv) The possibility that small vessels, ice and other floating objects may not be detected by radar at an adequate range;
        (v) The number, location and movement of vessels detected by radar;
        (vi) The more exact assessment of the visibility that may be possible when radar is used to determine the range of vessels or other objects in the vicinity.

47. Aramark failed to maintain a safe speed as required by USCG Inland Navigational Rule 6.

48. Aramark's violation of one or both Inland Navigation Rules alleged above places the presumption under the Pennsylvania Rule that it caused Annette Gill's injuries as alleged herein.

**COUNT IV**
(Pattern & Practice-Aramark)

49. The Gills reincorporate all prior allegations herein.

50. The factual allegations above show both a pattern and practice of grossly negligent activity combined with a reprehensible lack of concern for public safety over a period of many years sufficient to warrant the imposition of punitive damages in this case.

51. Despite over two dozen wake-related accidents since 2006, including 5 fractured backs in less than 5 years since 2015, Aramark has never changed its operations, implemented a corrective action plan, or even investigated a single wake-related claim because, as Sr. Aramark Vice-President Kelly Zwierzchowsky testified at

her deposition on August 10, 2020, every wake-related claim, injury and lawsuit are nothing more than just "allegations".

52. Aramark revenue summaries for 2017 and 2018 (the year prior to this accident) show total ticket revenue for the tour boat fleet in 2017 of $6,405,847.56 and revenue for 2018 in the total amount of $6,734,095.18.

53. Aramark's refusal to transition its fleet into low wake vessels, or simply slow down, despite nearly 4 decades of notice, creates a presumption that Aramark places profit over safety at the risk of every individual boating on the Lake warranting a finding that Aramark's actions constitute an unreasonably dangerous patter & practice of grossly negligent operations warranting exemplary damages to deter Aramark's long-time tortious conduct as outlined herein.

**WHEREFORE**, the Gills demand all damages entitled by law, including compensatory damages of not less than $450,000 from all Defendants and punitive damages of not less than $6,734,095.18 against Aramark plus taxable costs and pre & post-judgment interest.

Dated: December 1, 2019.

**JOSEPH W. WATKINS, P.C.**

/s/ Joseph W. Watkins
Joseph W. Watkins
A*ttorney for Larry and Annette Gill*